UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 5:20-242-01 |
| V. | |
| DAMICHAEL BROWN | DISTRICT JUDGE FOOTE<br>MAG. JUDGE HORNSBY |

**UNITED STATES' OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS**

The United States of America respectfully submits this memorandum in opposition to defendant Damichael Brown's motion to suppress evidence. *See* Rec. 24. Brown seeks the suppression of the firearm, marijuana, and statement obtained by police following a traffic stop. Rec. 24 at 1–2. Contrary to Brown's argument, the United States' anticipated evidence at the suppression hearing will prove that (1) police had reasonable suspicion to stop Brown's car based on a traffic infraction; (2) Brown lacks standing to challenge the search of his car because he abandoned it; (3) police lawfully searched Brown's car pursuant to the automobile and search incident to a lawful arrest exceptions to the warrant requirement; and (4) Brown's statement were voluntary and followed *Miranda* warnings and a *Miranda* waiver, or were otherwise voluntary and spontaneous.

## BACKGROUND

The United States anticipates that its evidence at the suppression hearing will include the testimonies of Troopers Cody Williams and Andrew Phil-

lips of the Louisiana State Police. It will also include their body and dash camera recordings and photographs of the traffic stop and Brown's arrest. The United States expects that this evidence will establish the following facts.

On December 5, 2019 at 1:34 a.m., Trooper Williams was on patrol in Shreveport while driving a marked police car. Near the intersection of Hollywood and Jewella avenues, Trooper Williams saw a red Honda Accord with an expired, five-day dealer tag affixed to its license-plate holder in lieu of a license plate. Gov. Ex. 1 (Photograph of Dealer Tag). Trooper Williams later learned that Brown was the driver and sole occupant of the car.

Trooper Williams activated his emergency lights and initiated a traffic stop of Brown's car based on the traffic infraction of the expired tag. Immediately after activating his emergency lights, Trooper Williams verbally noted that he saw the expired dealer tag on the car. Gov. Ex. 2 at 00:39 (Williams Dash Camera). Brown drove his car into the parking lot of a nearby gas station and stopped next to a gas pump. Gov. Ex. 2 at 00:49 (Williams Dash Camera). He applied his breaks but did not shift his car into park. Gov. Ex. 2 at 00:49 (Williams Dash Camera). After Trooper Williams opened his car door and stepped out, Brown drove away at a high rate of speed. Gov. Ex. 2 at 00:57–02:27 (Williams Dash Camera); Gov. Ex. 3 at 00:26–00:34 (Williams Body Camera).

With Troopers Williams and Phillips[1] in pursuit, Brown turned east out of the gas station parking lot onto Hollywood Avenue, and then south onto East Jewella Road, east onto Lancaster Street, and south onto West Canal Boulevard. Gov. Ex. 2 at 00:57–02:27 (Williams Dash Camera); Gov. Ex. 4 (Google Maps Route). The defendant then turned around and drove north on West Canal Boulevard—through residential yards and around Trooper Phillips—and

---

[1] Trooper Phillips was Trooper Williams' partner during this shift. Each trooper drove their own marked, police cars and were in uniform.

finally spun out of control and crashed into a street sign. Gov. Ex. 2 at 00:57–02:27 (Williams Dash Camera); Gov. Ex. 4 (Google Maps Route). The entire chase lasted approximately one and a half minutes, during which time Brown recklessly drove his car into an oncoming traffic lane, between traffic lanes, through a vacant lot and residential yards, and around police cars in an attempt to flee from police. Gov. Ex. 2 at 00:57–02:27 (Williams Dash Camera).[2]

Trooper Williams pulled his police car up to the front left corner of Brown's car moments after the crash. Gov. Ex. 2 at 02:27–02:34 (Williams Dash Camera). Brown accelerated his car forward and struck the trooper's front, right fender and driver door. Gov. Ex. 2 at 02:27–02:34 (Williams Dash Camera); Gov. Ex. 5 (Photograph of Damage to Police Car). Trooper Williams reversed his police car a few feet to free his door. Gov. Ex. 2 at 02:27–02:40 (Williams Dash Camera).

Meanwhile, Brown jumped into the front passenger seat of his car and made quick, reaching motions around the passenger seat. Gov. Ex. 2 at 02:27–02:40 (Williams Dash Camera). Trooper Williams got out of his police car and attempted to grab Brown in the passenger seat, but Brown moved over and jumped out of the driver doorway of his car and began running north on West Canal Boulevard.[3] Gov. Ex. 2 at 02:40-02:43 (Williams Dash Camera); Gov. Ex. 3 at 02:05–02:16 (Williams Body Camera). Brown left his car halfway on the street with its keys in the ignition, engine running, headlights burning, and driver door completely open. Gov. Ex. 6 at 03:20–03:25 (Phillips Body Camera).

---

[2] Upon seeing the troopers' emergency lights, officers of the Shreveport Police Department who happened to be in the area began pursuing Brown and ultimately responded as backup. They could not communicate via radio with the troopers.

[3] When Trooper Williams attempted to grab the defendant at this point, the defendant pushed Trooper Williams away causing his body camera to detach from his shirt and fall to the ground. Gov. Ex. 3 at 02:15–02:17. Trooper Williams picked it up a little less than eight minutes later. *Id.* at 10:03.

After a few paces, Trooper Williams tased Brown, causing him to fall to the ground. Gov. Ex. 2 at 02:40–43 (Williams Dash Camera). However, the defendant rose to his feet and began fleeing again. Gov. Ex. 2 at 02:43–02:47 (Williams Dash Camera). Upon being tased for the second time by Troopers Williams and Phillips, Brown fell to the ground where the troopers placed him in handcuffs. Gov. Ex. 2 at 02:43–03:00 (Williams Dash Camera).

As additional police arrived on scene and helped Trooper Williams secure Brown, Trooper Phillips walked back to his police car to turn off its siren. Gov. Ex. 6 at 02:50—03:07 (Phillips Body Camera). Trooper Phillips then walked to the open, driver doorway of Brown's car and saw in plain view a small bag containing apparent marijuana resting on the side of the driver seat. Gov. Ex. 6 at 04:35–04:39 (Phillips Body Camera). Based on his training and experience, he believed the bag contained marijuana immediately upon seeing it. After picking up the marijuana and briefly looking at it, he tossed it onto the top of the driver seat and leaned into the driver doorway to shine his flashlight into the rear passenger compartment. Gov. Ex. 6 at 04:39–04:43 (Phillips Body Camera). Within about four seconds, he saw a Glock 19 pistol resting behind the passenger seat. Gov. Ex. 6 at 04:39–04:43 (Phillips Body Camera). Upon picking it up, Trooper Phillips immediately noticed that the pistol had been illegally modified to function as a fully automatic machinegun. Gov. Ex. 6 at 04:43–04:48 (Phillips Body Camera).

The United States expects that Trooper Williams will testify that he would have informed Brown of the defendant's *Miranda* rights shortly after apprehending and handcuffing the defendant on the street based on his routine practice. However, Trooper Williams' body camera did not record the *Miranda* warnings because the defendant had knocked it off by the defendant's car. *See supra*, note 3. Trooper Phillips' body camera did not record the *Miranda* warnings because he had quickly walked away from the defendant and Trooper Wil-

liams to return to his police car and turn off his siren. Gov. Ex. 6 at 02:50—03:07 (Phillips Body Camera).

Additionally, the United States expects that Trooper Williams will testify that during transport to the jail, Brown asked him about the nature of his charges. Trooper Williams summarized the charges that would appear in his arrest report but did not pose a follow up question. Brown then spontaneously said, in sum and substance: "This is Caddo Parish and I'm not worried about the charges because I'll find a loophole and be back out on the street soon." This statement was not recorded on the Troopers' body or dash cameras because they had turned off all of the cameras before leaving the scene. At the time of Brown's arrest, it was policy to only record detainee transportations when the detainee was the opposite sex of the transporting officer.

## ARGUMENT

**1. Assuming for argument that a Fourth Amendment seizure occurred before Brown's flight, the police at least had reasonable suspicion to stop Brown's car based on his obvious commission of a traffic infraction.**

Assuming for argument that a Fourth Amendment seizure occurred before Brown's flight, the police at least had reasonable suspicion to stop Brown's car based on his obvious commission of a traffic infraction.[4] The Fourth Amendment prohibits unreasonable seizures by the government, and its protections extend to "a brief, investigatory stop" of a person or automobile by the police. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002). Because such seizures are less intrusive than a traditional arrest, reasonable suspicion—a less strict

---

[4] A seizure under the Fourth Amendment does not occur until the person submits to the police either by force or a show of authority. *California v. Hodari D.*, 499 U.S. 621, 629 (1991); *United States v. Wilson*, 670 F. App'x 377 (5th Cir. 2016). As discussed further below, Brown merely pulled into a gas station parking lot and applied his breaks momentarily before fleeing. The United States contends this act did not constitute a submission to the show of authority made by the police. *See Hodari D.*, 499 U.S. at 629.

standard than probable cause—is sufficient to qualify the seizure as reasonable. *See Navarette v. California*, 572 U.S. 393, 402 (2014). The reasonable suspicion inquiry requires a review of the "totality of the circumstances" to determine "whether the detaining officer had a 'particularized and objective basis'" for suspecting wrongdoing." *United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003) (quoting *Arvizu*, 534 U.S. at 273).

Here, Trooper Williams had reasonable suspicion to stop the defendant upon seeing the expired dealer tag on the back of the defendant's car. *See* LA. REV. STAT. ANN. § 47:520(E) (providing that dealer tags or identification plates "shall be valid for five days from the date on which the identification plate was placed in service"). Furthermore, driving a car without a registered and current license plate is a violation of several Louisiana traffic laws, including LA. REV. STAT. ANN. § 32:51 (providing that "[n]o person shall operate . . . any motor vehicle upon the highways of this state unless it is registered with the commissioner"), LA. REV. STAT. ANN. § 47:501 (providing that "[e]very vehicle [so required] shall be registered in the parish or domicile of the owner"), LA. REV. STAT. ANN. § 47:536(1) (providing that "no person shall . . . operate . . . any motor or other vehicle . . . which is not registered or which does not have attached thereto and displayed thereon . . . the number plates assigned to it for the current year"); and LA. REV. STAT. ANN. § 47:536(2) (providing that "no person shall . . . display . . . any registration certificate, or registration number plate, knowing the same to . . . have become cancelled, revoked, suspended, or altered").

Based on his training and experience, Trooper Williams knew that dealer tags were only valid for five days from the purchase of a car, and saw that the defendant's dealer tag displayed in large, hand-written numbers the date of November 4, 2019. Trooper Williams saw no other visible license plate on the defendant's car. This information provided Trooper Williams with a

"particularized and objective basis" to suspect that the defendant was in violation of the abovementioned traffic laws. The Court should therefore find that the traffic stop was justified at its inception.[5]

### 2. Brown lacks standing to challenge the search of his car because he abandoned it before fleeing from police on foot.

Brown lacks standing to challenge the search of his car because he abandoned it before fleeing from police on foot. To establish standing for a Fourth Amendment claim, a defendant must show he has a "personal expectation of privacy in the place searched, and that his expectation is reasonable; i.e., one that has 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143–44, n.12 (1978)).

A reasonable expectation of privacy cannot manifest in abandoned property. *United States v. Barlow*, 17 F.3d 85, 88 (5th Cir. 1994). Whether a defendant abandoned property turns on his intent, which "may be inferred from words spoken, acts done, and other objective facts." *Id.* The "intent to relinquish ownership" in the "strict property sense" need not be shown; instead, "an intent voluntarily to relinquish his privacy interest is sufficient." *Id.* When a defendant "leaves an item in a public place," he abandons "his reasonable expectation of privacy" in it. *Id.*

---

[5] The Court need not proceed to the second prong of the reasonable suspicion test that examines the reasonableness of the duration and scope of the traffic stop. *See United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003) (providing the second prong of the reasonable suspicion test). Trooper Williams never got the chance to approach the defendant because he fled at a high rate of speed as soon as the trooper stepped out of his police car. Trooper Williams' reasonable suspicion of a traffic infraction therefore immediately morphed into probable cause to arrest the defendant for numerous crimes, including LA. REV. STAT. ANN. § 47:501 (resisting an officer) and LA. REV. STAT. ANN. § 14:99 (reckless operation of a vehicle).

Here, the defendant's intent to abandon his privacy interest in his car was objectively manifested in numerous ways. He fled from police while driving his car, and then got out of the car and continued to flee from police on foot. Upon fleeing on foot, the defendant left the car halfway in a public street with its keys in the ignition, engine running, headlamps burning, and driver door ajar. In other words, the defendant deliberately left his car in a public place and in such a condition that anyone could easily get inside and drive away, much less look inside of it.

The facts of this case are nearly identical to those in *United States v. Edwards*, in which the Fifth Circuit found that a defendant relinquished his privacy rights in his car after abandoning it during flight from police. 441 F.2d 749, 751 (5th Cir.1971). There, police observed the defendant commit a traffic infraction by speeding on a public highway. *Id.* at 750. After the defendant refused to stop his car, police pursued him in a high-speed chase. *Id.* The defendant eventually missed a turn, "ran partially off the pavement, and brought his car to a stop" with the "tail end . . . on the pavement" and "the front end about two feet from a ditch." *Id.* The defendant then "jumped from the car, leaving the lights burning and engine running, and fled on foot." *Id.* The police eventually walked back to and made a "general inspection" of the defendant's car, finding un-taxed whiskey in its trunk. *Id.*

While noting that abandonment must be voluntary, the Fifth Circuit first reasoned that the mere lawful pursuit of the police under the circumstances did not "make involuntary the [defendant's] choice to abandon his car to the pursuing officer." *Id.* at 753. The Fifth Circuit concluded the defendant "abandoned any reasonable expectation to a continuation of his personal right against having his car searched under these circumstances, and thus lost his Fourth Amendment rights . . . ." *Id.*

For the same reasons in *Edwards*, Brown lacks a reasonable expectation of privacy in his car; he abandoned it with the engine running, on the side of a public street, before fleeing on foot from the lawful pursuit of the police. *See id.* Therefore, the Court should find that Brown lacks standing to challenge the search of his car. *See id.*

### 3. The police were justified in searching Brown's car pursuant to the automobile and search incident to a lawful arrest exceptions to the warrant requirement.

The police were justified in searching Brown's car pursuant to the automobile and search incident to a lawful arrest exceptions to the warrant requirement. *See Arizona v. Gant*, 556 U.S. 332, 338 (2009); *United States v. Ross*, 456 U.S. 798 (1982), 821–22. Warrantless searches are generally unreasonable under the Fourth Amendment because they lack the oversight and authorization of a detached, neutral magistrate. *See Gant*, 556 U.S. at 338. However, the Supreme Court has "recognized several exceptions to this rule when probable cause otherwise exists and practicality necessitates expediency, including the contexts of automobile and arrest searches." *United States v. Jerry*, No. 18-CR-00331, 2019 WL 3228847, at *8 (W.D. La. June 18, 2019); *see Gant*, 556 U.S. at 338; *Ross*, 456 U.S. at 821–22.

The automobile exception permits police to search "every part of the [lawfully stopped] vehicle and its contents that may conceal the object of the search" when police have probable cause that the car contains contraband. *Ross*, 456 U.S. at 825. On the other hand, the search incident to a lawful arrest exception permits police to search the passenger area of an automobile incident to a recent occupant's arrest "if it is reasonable to believe the vehicle contains evidence of the offense of arrest." *See Gant*, 556 U.S. at 338.

First, police lawfully searched Brown's car under the automobile exception because they had probable cause that his car contained contraband. After

attempting to lawfully stop the defendant for a traffic infraction, Trooper Williams saw the defendant recklessly flee from him, driving over yards and around Trooper Phillips' police car. After Brown crashed, Trooper Williams saw him jump to the passenger seat of his car and make furtive, reaching motions around.

Next, Trooper Williams saw Brown flee on foot from the car. Then—prior to the search—Trooper Phillips also saw a bag of apparent marijuana resting on the side of the driver seat. The marijuana was in plain view as the defendant had left his car door completely ajar. *See United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (applying both the plain view and collective knowledge doctrines together). Based on Brown's reckless driving, flight, furtive, reaching motions inside the car, and the marijuana in plain view, police had probable cause to believe Brown's car contained contraband, including illegal drugs or firearms, and were permitted to search Brown's car pursuant to the automobile exception.

Second, police lawfully searched Brown's car under the search incident to a lawful arrest exception because it was reasonable for them to believe the car contained evidence of Brown's offenses of arrest, including reckless driving and resisting arrest in the form of flight from an officer. It was objectively reasonable for the police to believe Brown so operated his car because he was intoxicated, and therefore that his car contained alcohol and illegal drugs, or paraphernalia and packaging of the same.

In addition to reckless driving and resisting arrest, police ultimately arrested the defendant for simple possession of the marijuana that Trooper Phillips found in plain view prior to the car search. Accordingly, police had additional justification to search Brown's car under the search incident to a lawful arrest exception because it was reasonable to believe more evidence of

illegal drugs were inside his car. For these reasons, the Court should deny Brown's motion to suppress evidence because police lawfully searched his car pursuant to the automobile and search incident to a lawful arrest exceptions to the warrant requirement.

> **4. Brown's statement to police was voluntary and followed *Miranda* warnings and a *Miranda* waiver, or was otherwise spontaneous and voluntary.**

Brown's statement to police was voluntary and followed Miranda warnings and a Miranda waiver, or was otherwise spontaneous and voluntary. Prior to the custodial interrogation of a defendant, police must provide him with *Miranda* warnings and obtain a knowing, voluntary, and intelligent waiver of his Fifth Amendment rights. *Miranda v. Arizona*, 384 U.S. 439, 471–72 (1966). Statements to police must also be voluntary under the Due Process Clause of the Fourteenth Amendment. *Oregon v. Elstad*, 470 U.S. 298, 304 (1985); *Rogers v. Richmond*, 365 U.S. 534, 544 (1961).

Federal courts review the voluntariness of the *Miranda* waiver and the statement itself under the totality of the circumstances. *United States v. Santiago*, 410 F.3d 193, 202 (5th Cir. 2005); *see Haynes v. State of Wash.*, 373 U.S. 503, 513 (1963). Whether a statement is voluntary turns on "whether the defendant's capacity to resist was overborne to such a degree that the resulting confession could not be said to be the product of the accused's own self-determination." *Santiago*, 410 F.3d at 202; *United States v. Mullin*, 178 F.3d 334, 341 (5th Cir. 1999).

Additionally, in the *Miranda* context, "interrogation" means "[a] practice that the police should know is reasonably likely to evoke an incriminating response from a suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Accordingly, a voluntary and spontaneous statement by a defendant in police custody is not subject to suppression regardless of whether *Miranda* warnings

were first provided. *United States v. Ruiz*, 427 F. App'x 323, 324 (5th Cir. 2011); *see also See United States v. Gonzales*, 121 F.3d 928, 940 (5th Cir. 1997), *overruled on other grounds by United States v. O'Brien*, 560 U.S. 218 (2010) (finding that an officer's neutral follow-up question to the defendant's spontaneous statement did not rise to the level of interrogation).

Here, although not recorded because the defendant knocked off his body camera, Trooper Williams would have informed Brown of his *Miranda* rights while he handcuffed him in the street or immediately afterward based on his normal practice and habit. Trooper Williams would not have asked Brown any questions unless he received an affirmative response that he understood or waived his *Miranda* rights based on the same practice and habit. On the way back to the jail, Brown became talkative and eventually asked Trooper Williams about the nature of his charges. After Trooper Williams provided Brown with a summary of his charges, Brown spontaneously told Trooper Phillips: "This is Caddo Parish and I'm not worried about the charges because I'll find a loophole and be back out on the street soon." Brown's statement was not in response to a question posed by Trooper Williams. Accordingly, regardless of whether Brown waived his *Miranda* rights, his statement was not subject to police questioning or its functional equivalent. Therefore, his statement is not subject to suppression under *Miranda*. *See Gonzales*, 121 F.3d at 940.

Moreover, Brown's statement was voluntary. *See Haynes*, 373 U.S. at 513; *Santiago*, 410 F.3d at 202. Neither of the troopers made any threats or promises to Brown prior to him making the statement, and did not otherwise observe him to be in any physical, mental, or emotional distress. *See Haynes*, 373 U.S. at 513; *Santiago*, 410 F.3d at 202. The voluntariness of Brown's statement is further supported by his approximate thirty years of age and his lengthy criminal history that includes multiple felony convictions. *Santiago*, 410 F.3d at 202 (finding that a defendant's prior experience with the criminal

justice system bore on his knowledge of the Fifth Amendment rights he was waiving); *United States v. Collins*, 40 F.3d 95, 98 (5th Cir. 1994) (same). For these reasons, the Court should find that Brown's statement was voluntary, and that regardless of the issue of waiver, Brown's statement was spontaneous and not the result of police interrogation. Therefore, the Court should deny Brown's motion to suppress his statement.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny Brown's motion to suppress evidence in its entirety.

Respectfully Submitted,

ALEXANDER C. VAN HOOK
Acting United States Attorney

*/s/ Cadesby B. Cooper*
CADESBY B. COOPER
NY Reg. #5414483
300 Fannin St, Ste 3201
Shreveport, LA 71101
Office: 318-676-3600
cadesby.cooper@usdoj.gov